The opinion of the court was delivered by
Breaux, J.
This was an action to recover a judgment upon a claim due by the defendant, Hewitt, to the plaintiff, and to set aside a transfer of property made by the defendant Hewitt on the 28th May, L895, to the special trustee for the Traders Bank of Mansfield. The property transferred by the act assailed was “all of Hewitt’s “ right, title and interest in suit 5157, entitled Hewitt vs. Williams “ et al., with two certain notes, one for one thousand and fifty “ dollars and the other for three thousand seven hundred dollars, “ and other rights claimed by Hewitt in a third opposition in suit “ 1440.” Out of the property thus transferred the sum of four thousand six hundred and thirty-six dollars and ninety-seven cents was collected by the commissioners for the bank, and is the amount in controversy.
Plaintiff in replication to defendants’ answer, claiming the property as its own, invoked the plea of estoppel.
Plaintiff made, in her petition, the usual averment required to sustain a revocatory action. The defendant bank, on the other hand, claimed that the property was its property, from the first, and that the transfer by Hewitt was only an acknowledgment of the fact that it was the owner prior, to the transfer.
In the alternative, if the act of transfer is set'aside, the bank claimed a vendor’s privilege on the property transferred on the ground that it had not been paid for the property.
Defendant, for an amount it charges as due it, reconvened.
The facts relating to the insolvency charged by the plaintiff, one of the important issues of the case, are that at the time that he, Hewitt, *1023 signed the act of transfer in question, he was insolvent. This we are led to believe was not known to the commissioners who represented the bank, the transferee of the property, nor do we think that it was generally known, or known at all, in the community in which the debtor resided and had his business.
The facts, relating to the indebtedness the defendant claims was due by Hewitt to it at the date of the transfer, are,'that on January 1, Hewitt, who was the president of the Bank of Mansfield, drew from the bank on a note, signed by Oarruth & Co., of which firm he was the managing partner, the sum of four thousand dollars, and on May 29, following, he drew on his own note four thousand dollars more.
On June 2, 1893, he returned something on the amount he had borrowed from the bank, and had entries of such returns made on what he chose to designate his special account with the bank. The amount placed to his credit on this special account was three thousand three hundred and forty-eight dollars and éighty-three cents. It was to his credit on this special account on the day that the board of directors entered an order upon the minutes of the board, closing the bank and directing a discontinuance of its business. A few days previous to that day the paper of the bank had gone to protest. The December following, after the bank had been closed, Hewitt charged himself on the special account with the note of thirty-seven hundred dollars, property of the bank at that time, signed by T. J. Williams as maker, upon which he subsequently instituted suit against the maker for his own account, without, at the time, knowledge of the directors.
The defendant bank also claimed that the president owed an additional amount which made him the debtor of the bank for a balance remaining after ocher assets of the bank had been placed to his order.
The facts in regard to the reconventional demand are, that in another case it was decided that the bank was not plaintiff’s debtor. It followed from the decision that instead of the bank, Hewitt & Oo. were the debtors, and, in consequence, they were debited, and the former, the bank, was given proper credit against plaintiffs, Sentell et al. In that manner the plaintiffs became - indebted to the bank in an amount claimed by the defendant commissioners of the bank.
*1024 As relates to closing the bank it was charged by the defendant bank that the president passed over the order unnoticed and kept the bank open, and that plaintiffs gave their approval in open disregard of the order of the directors. The bank was insolvent. Sentell vs. Rives, 48 An. 1214.
Upon these issues the court rejected plaintiffs’ demand, to the extent that the action was revocatory, and allowed the reconven - tional demand with five per cent, interest.
Plaintiffs are the appellants from the judgment.
THE GOOD FAITH OF THE COMMISSIONERS.
In considering the issues before us for determination our attention was, in the first place, directed to the disclaimer of the commission - ers (by whom Hewitt’s return of certain assets to the bank was accepted) of any knowledge of the disorder of his affairs.
The disclaimer is sustained by the evidence.
Tlie notes returned were held by the president at the date of the return under an entry in the books of the bank, unauthorized, it is contended, and of which it is asserted the board of directors had no notice until about the date the return was made.
It was not alleged that the commissioners participated in any fraud, or that they had any notice of the insolvency of Hewitt at the date of the transfer. They appear here as having acted in entire good faith in obtaining, as they alleged, the return of certain values. We have seen that with the view of putting an end to the operations of the bank the board of directors had an order entered upon their minutes.
We are not concerned in this case with the rights of shareholders complaining that the business of a corporation was, without notifying them, brought to a close; the question of authority arises between the president of the bank and the board of directors, by whom he had been elected president, and whose mandatory he was.
He, in any case, could not, after the order to close had been issued, negotiate paper transferred to his personal account and benefit, particularly in presence of the fact that he was at the time a debtor of the bank in a sum larger than the notes he held after the entry before mentioned had been made. There is evidence before the court that part of the notes and other claims were entered on the books of the bank, in order to enable him, Hewitt, to bring suit in his own name, *1025 to be followed by an accounting by him for any amount collected. But it remains that the change on the face of the books was entirely ex parte and unauthorized by the board of directors.
The want of authority of this officer, Hewitt, to violate the order of his board of directors was considered by us in another case, in which this court held that he was without authority to have a claim of plaintiff, due by himself, carried on the books of the bank of which he was the president, as an indebtedness of the bank. Sentell & Co. vs. Rives, 48 An. 1214.
In view of this cited case, it is not possible for us, with any degree of certainty, to decide that 'he had greater authority in matter of notes and claims here involved; that is, he did not have the authority to have them transferred on the books of the bank to his credit.
But grant'ed, for the present, that he acquired the values despite the fact that he was contravening the order of the board of directors, although he was, at the time, indebted to the bank in a large amount already, the commissioners for the bank, who sought no advantage over other creditors, committed no wrong, and only, it appears to us, sought to secure their principal. They did not, in our judgment, act improperly in accepting the contract of transfer under the circumstances of this case. Bank vs. Cotton Press Company et als., 39 An. 834.
It was, as to them, a business transaction in which it appears that they had no cause to suspect the insolvency of the debtor. In principle one participates in fraud when he knows of the insolvency of the debtor, and he is, in consequence, aware that the act to which he becomes a party will cause loss to creditors. Here there is nothing of the sort. If they knew that he was indebted, they show by testimony that they did not know of the amount.
One may be indebted without wishing to defraud his creditors. Laurent, Droit Civil Francais, Vol. 16, p. 517.
ISSUE AS RELATES TO ESTOPPEL.
The plaintiffs urge that the defendant bank was estopped by entries in its books, and by its pleadings in a suit brought against Hewitt, their common debtor.
We have seen that the entries in the books were made after the directors’ order to close the bank had been issued.
*1026 While ifc is true that one may be estopped by the act of his agent within the scope of the latter’s authority, he is not, on the other hand, estopped unless his authority, either express or implied, is shown. Here the president was acting in violation ofthe order of his principal and increasing his indebtedness to it, the bank, in opposition to an order of the board of directors, of which he was well aware. Estoppel is commonly defined as an indisputable admission arising from the circumstances that the one claiming the benefit of it, has in good faith on his part, induced by the voluntary, intelligent action of the one against whom it is averred, to change his position.
There was no voluntary, intelligent action on the part of the bank, with the view of becoming the creditor of its president for an additional amount, and the action of the president could not bind the bank, as operating as an estoppel, in a matter well known to the plaintiff in all its details and which they approved.
With regard to the pleadings and the judgment operating it is argued by the plaintiffs, as an estoppel, the facts are that the suit of the liquidating commissioners was filed the same day that the act of transfer or return here assailed was passed.
The petitioners, who are the defendants here, claimed as due to them by the defendant, the sum of six thousand two hundred and twenty-eight dollars, with interest.
The defendant, Hewitt, pleaded the general denial, and. on the trial he testified, without any objection on the part of plaintiffs, that he had returned to the bank the notes of the bank with which, we have before seen, he had charged himself. No credit, in that ease, was claimed for these notes — that is, judgment was rendered for the amount claimed, and nothing was said in regard to crediting the defendant, Hewitt, with the amount of the notes in question.
The record does not inform us why no credit was given for them in the judgment. Evidently they were considered of little value at the time. They were involved in litigation. The suit on these notes was prosecuted to a successful termination and a sum collected in amount before stated. Immediately after the return of the notes the liquidating commissioners were made the parties plaintiffs, and during a considerable time they prosecuted the suit without objection from any one, on the ground that they had no right to stand in judgment.
*1027 The suit was not conclusive in its effect. The issue was open to correction and explanation. The plaintiffs were not parties, and in no way represented or interested in the result as presented by the pleadings in the said case of Bank vs. Hewitt. As it thoroughly explains the issue upon this point, though late in the ease to quote from the evidence, we reproduce the whole of defendant’s testimony in that case. It is not lengthy and contains the only reference made during the trial, to the returned notes. Neither in the pleadings nor in the judgment, or in anything else connected with the case, were these notes mentioned.
“ EVIDENCE ON PART OP DEPENDANT.”
The defendant admits his legal “ liability for the debt sued on to the amount of six thousand one hundred and twenty-eight dollars and forty-nine cents; that said debt was made under the following circumstances: that about nine thousand three hundred and fifty-three dollars was charged to me for notes and accounts which have been returned to the bank. One note for about three thousand seven hundred dollars against T. J. Williams; one note against the same party for two thousand and thirteen dollars, and two notes for one thousand and fifty dollars, each against same party. All these have been returned to the bank by notarial act by request of the attorneys of the liquidators.”
Thus, the evidence in the suit upon which it is sought to base an estoppel shows that the notes had been returned to the bank by the notarial act assailed in the case before us for decision. The bank, in the case, invoked as having operated as an estoppel, made no allegation about notes and assumed no position in regard to them. It neither asserted nor denied any right. Nemo presumitur donaré. *
And lastly, in reference to estoppel, plaintiffs assert that the defendants representing the bank on May 28, 1895, recognized Hewitt’s ownership of this property and took it from him to pay a debt of six thousand one hundred and twenty-eight dollars and forty-nine cents, then due by Hewitt to the bank, and that the debt was partly made up of charges against Hewitt on the books of the bank, of the notes and account in question upon which the judgment rendered in the case, pleaded as res judicata, was pronounced.
In our view, the defendant commissioners were not estopped by the *1028 acceptance of the notes and by the judgment obtained thereon from showing the true state of facts.
The act of transfer and return of the notes was, in effect, a col-ateral security. We quote from the act: “Whatever amount is realized under these said claims is to be credited on my indebtedness to the bank aforesaid,” i. e., on Hewitt’s indebtedness to the bank.
These conditions of the act protected the debtor; he could still claim credit as amounts were collected. The condition continued in full force after the judgment.
As Hewitt could not be denied the right of claiming due credit for amounts collected on these notes, the plaintiffs are without right to sustain the position that the bank has changed the nature of the debt, has merged it into the judgment, and that it thereby is estopped from showing that it continued to hold the notes for its protection as a creditor. The bank has not changed its position, it only continues to hold the notes, the proceeds of which it is bound to properly credit.
INTEREST allowed.
As to the reconventional demand by the defendants, the amount appears correct.
The objection-is that the District Judge rendered judgment as relates to legal interest, although no mention is made of interest in the prayer of the plea in reconvention.
Interest is claimed in the reconventional demand, but it is not expressly prayed for in the prayer.
The question here is whether interest was claimed. We think it was claimed, and that the prayer, in view of the allegations of the petition, included interest. Daquin vs. Coiron, 8 N. S. 623; Duke of Richmond et al. vs. Milne’s Executors et al., 17 La. 326.
Having considered the different grounds of plaintiff’s action, we are brought to the alleged error in the judgment between J. E. Hewitt and the liquidators of the bank. Hewitt claimed a large amount as a credit for notes returned. It was given in the judgment. The evidence has not satisfied us that he is entitled to a larger credit than the amount of the notes mentioned in the act of transfer; as to the remainder of credits claimed by him, we propose to reserve all of his rights to have it decreed correct hereafter if returned. It follows that the credit allowed will be reduced ‘from *1029 eight thousand four hundred and fifty-eight dollars and seventy-five cents to four thousand seven hundred and fifty dollars.
It is therefore ordered, adjudged and decreed that the judgment appealed from is affirmed, save as to the credit of eight thousand four hundred and fifty-eight dollars and seventy-five cents, allowed to J. E. Hewitt, which is hereby reduced to four thousand seven hundred and fifty dollars, as between him and the defendant bank, reserving to Hewitt the right he may have to a larger amount, for notes and other property returned, or paid by him to the bank.
With this amendment, let the judgment remain affirmed at appel-lees’ costs, on appeal.